UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK DARNELL R.,[1] <br><br>            Plaintiff, <br><br>    v. <br><br> MICHELLE KING, Acting Commissioner of Social Security Administration, <br><br>            Defendant. | Case No. 2:23-cv-09048-PD <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AGENCY DECISION** |

Plaintiff challenges the denial of his application for Supplemental Security Income. For the reasons stated below, the decision of the Administrative Law Judge is reversed and the Court remands this matter on an open record for further proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the United States Judicial Conference.

Michelle King became Acting Commissioner of Social Security on January 20, 2025. Pursuant to Rule 25(d), she is automatically substituted for Martin J. O'Malley as Defendant in this suit.

## I. Pertinent Procedural History and Disputed Issues

On February 13, 2020, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), alleging disability beginning June 30, 2002.[2] [Administrative Record ("AR") 298-306.][3] Plaintiff's applications were denied administratively on January 15, 2021, and upon reconsideration on July 6, 2021. [AR 18, 138-39, 182-83.] Plaintiff requested a hearing, which was held via telephone due to the COVID-19 pandemic on September 7, 2022, before an Administrative Law Judge ("ALJ"). [AR 46-69.] Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. [Id.] At the hearing, Plaintiff dismissed his Title II claim and chose to proceed only with his Title XVI claim. On October 21, 2022, the ALJ issued a decision finding that Plaintiff has not been under a disability as defined by the SSA, from June 30, 2002, through the date of decision. [AR 18-29.] The Appeals Council denied Plaintiff's request for review on August 31, 2023, rendering the ALJ's decision the final decision of the Commissioner. [AR 1-7.]

---

[2] Plaintiff previously filed applications for disability income and for supplemental security income and was found not disabled on December 23, 2011. [AR 18, 70-85.] As a result, with respect to the unadjudicated period under the instant application, there is a rebuttable presumption of continuing non-disability under the *Chavez* Acquiescence Ruling. *See Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988); Social Security Acquiescence Ruling 97-4(9). The ALJ found that Plaintiff showed a changed circumstance affecting the issue of disability and that the presumption of continuing non-disability as set forth in *Chavez* has been rebutted because there is an alleged existence of impairments not previously considered. [AR 19.]

[3] The Administrative Record is CM/ECF Docket Numbers 11-1 through 11-11. Plaintiff's Opening Brief is at Docket Number 13 and the Commissioner's Brief is at Docket Number 15. Plaintiff did not file an optional Reply Brief.

2

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through September 30, 2007, and had not engaged in substantial gainful activity since his alleged onset date, June 30, 2002. [AR 21 ¶¶ 1, 2.]

At step two, the ALJ found that Plaintiff had the following severe impairments: "obesity; degenerative disc disease of the lumbar spine; depression; bipolar type schizoaffective disorder; and chronic obstructive pulmonary disease (COPD) (20 CFR 416.920(c))." [AR 22 ¶ 3.] The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. [AR 22.]

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). [AR 22 ¶ 4.]

Before proceeding to step four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") for medium work, as defined in the regulations, with the following limitations:

> The claimant can occasionally climb ladders, ropes, or scaffolds. He can frequently engage in all other postural activities. The claimant can withstand frequent exposure to dusts, fumes, odors, gases, and other irritants. He is able to perform simple, routine tasks, and can make simple, work-related decisions. He can occasionally engage in decision making, and can occasionally manage changes in the work setting.

[AR 24 ¶ 5.]

3

At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a Stores Laborer.  [AR 29 ¶ 6.]  This work does not require the performance of work-related activities precluded by Plaintiff's RFC (20 CFR 416.965).  [AR 29 ¶ 6.]

Accordingly, the ALJ concluded that Plaintiff has not been under a disability from June 30, 2002, through the date of decision.   [AR 29 ¶ 7.]

Plaintiff raises two issues:

(1) Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.

(2) Whether the ALJ improperly rejected the medical opinions in assessing the RFC.  [Dkt. No. 13 at 1-11.]

## II.    Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits.  A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Id.*; *Biestek v. Berryhill*, 587 U.S.97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).  Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[4]

---

[4] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

### III. Discussion

#### A. The ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons to discount his subjective complaints of physical and mental limitations. [Dkt. No. 13 at 4-8.] The Commissioner disagrees, arguing the ALJ properly considered his subjective testimony in assessing the RFC, which is supported by substantial evidence. [Dkt. No. 15 at 7-13.]

#### 1. Legal Standard

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *see also Smartt v. Kijakazi,* 53 F. 4th 489*,* 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the

---

cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024). (emphasis in original).

An ALJ may consider a claimant's conservative treatment when evaluating credibility, particularly when the claimant "responded favorably" to minimal treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) (same). Proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Mojarro v. Berryhill*, 746 F. App'x 672 (9th Cir. 2018) (same). An ALJ may also rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (same).

An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of credibility evaluation." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Courts, therefore, may not speculate as to the basis for unexplained conclusions but,

rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

## 2. Plaintiff's Subjective Symptom Testimony

### a) Plaintiff's Testimony

At the hearing, Plaintiff testified that he stopped working in June 2019 due to a variety of physical and mental impairments, including chronic pain in his shoulders and back, difficulty standing, sitting, and walking, COPD, sleep apnea, anxiety, and depression. [AR 55-62.] He testified that he has been hospitalized for throat paralysis. [AR 55.] He also testified that he has been "falling a lot" and is "not stable." [AR 55.] Plaintiff testified that in 2019, a cane and walker were prescribed to him, and he uses both. [AR 55.] He testified that he uses the walker and can walk about a block, and then needs to stop for five to ten minutes to catch his breath. [AR 55-56.] He testified that he has sciatica and can stand for approximately five to twelve minutes and then needs to sit down. [AR 56.] He testified that he also has problems with sitting for significant durations and needs to change positions to relieve pain. [AR 56.] Plaintiff testified that he has right shoulder pain that was caused by a wall of microwaves falling on top of him when he was working. [AR 57-58.] He testified that he cannot carry anything over three to five pounds and does not try to reach over his head or hold anything. [AR 58.] He testified that he has chronic back pain and described the pain level as a

7

"nine" on a scale of one to ten. [AR 58.] He takes medication for the pain. [AR 58-59.]

Plaintiff also testified that he has mental health issues, including symptoms associated with bipolar schizoaffective disorder and anxiety, and he also has difficulty sleeping, concentrating, and has memory problems. [AR 59-60.] Plaintiff testified that he also has difficulty interacting with others, because he is irritable or angry, and reports having manic episodes at least two to four times a month. [AR 61.] He testified that he would have difficulty following instructions from a supervisor, with attendance, and would be absent from work due to his chronic depression and anxiety. [AR 62.] Plaintiff testified that he began taking medication for his mental health issues in April and May of 2022 and explained that he had not taken any medication before that since 2015 because he was having problems with his insurance and was not able to get the medication. [AR 63-64.] Plaintiff was 55 years old on the hearing date. [AR 68.]

### b) Adult Function Report

In an Adult Function Report, filled out with the assistance of Anita Nguyen (an appointed representative), Plaintiff reported that he is homeless and lives alone. [AR 337.] He stated that he has chronic pain in his shoulders and back, which limits his ability to lift or carry heavy objects. [AR 337.] His shoulder pain is mainly on the right side. [AR 337.] Plaintiff reported difficulty standing, sitting, or walking for significant durations before needing to change positions to relieve the pain. [AR 337.] Plaintiff's pain makes it difficult for him to focus and complete tasks. [AR 337.] Plaintiff reported that his physical and mental conditions make it difficult for him to lift, squat, bend, stand, walk, sit, kneel, hear, and climb stairs, and affect his memory, concentration, and understanding, and his ability to complete tasks, follow instructions and get along with others. [AR 342.]

In addition to his physical conditions, Plaintiff reported that he suffers from depression and irritability and has problems interacting with others. [AR 337.] He reported he is moody and gets agitated. [AR 337.] He sleeps at different hours every night and has difficulty sleeping due to pain. [AR 338.] Plaintiff reported that since he is homeless, he eats when he can. [AR 338.] Plaintiff reported that he tries to change his clothes and bathe at the shelter once a week. [AR 338.] His daughter calls him daily to remind him to take his medication, to bathe and to change his clothes. [AR 339.] He cannot prepare meals because he has a hard time lifting and carrying things and because he is homeless. [AR 339.] He stated that he goes outside daily and travels by "riding in a car" or walking. [AR 340.] He shops for pre-made food in stores three to four times a week. [AR 340.] He stated he is unable to pay bills, handle a savings account or use a checkbook. [AR 340.] Plaintiff reported that he does not get along with other people and did not get along with co-workers and supervisors on previous jobs. [AR 343.] Plaintiff reported that he does not handle changes in routine well and is uncooperative and violent. [AR 343.]

### 3. Analysis

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for discounting his subjective complaints, with respect to his physical and mental limitations. [Dkt. No. 13 at 4-8.] "A claimant's subjective symptoms, if credited, are relevant to the determination of a claimant's [RFC].... The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work." *Ferguson*, 95 F.4th at 1198 (internal citations omitted). "To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an

9

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* at 1199 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). If step one is satisfied, the ALJ can only reject the plaintiff's testimony for "clear and convincing reasons," which ultimately requires the ALJ to "show [their] work." *Id.* (citations and internal quotation marks omitted).

At step two of the subjective symptom testimony analysis, an ALJ must identify which testimony is not credible and specifically link that testimony to evidence in the record that undercuts the credibility of the testimony. *See Brown-Hunter*, 806 F.3d at 494; *accord Ferguson*, 95 F.4th at 1200-01. The ALJ may not simply make the conclusory statement that Plaintiff's testimony is not credible because it is inconsistent with the record and then proceed with an RFC analysis. *Brown-Hunter*, 806 F.3d at 493-94. This is because the obligation to provide clear and convincing "reasons" for discounting a plaintiff's testimony is separate and distinct from any obligation to summarize medical record evidence that supports an RFC determination. *Id.*

Here, the ALJ found that Plaintiff had severe impairments including, obesity, degenerative disc disease of the lumbar spine, depression, bipolar type schizoaffective disorder, and chronic obstructive pulmonary disease. [AR 22 ¶ 3.] The ALJ further found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but also found that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and the other evidence in the record. [AR 25.]

In this case, the ALJ did not find that Plaintiff had engaged in any degree of malingering, and therefore was obliged to provide at least one "specific, clear, and convincing" reason supported by substantial evidence for

discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms. *Trevizo,* 871 F.3d at 678. The Court finds that the three reasons the ALJ provided for discounting Plaintiff's testimony—objective medical evidence, routine and conservative treatment and daily activities—do not meet this burden. [AR 24-28.]

### a) Inconsistent Statements with the Objective Medical Evidence

First, the ALJ summarized Plaintiff's testimony including that he had pain in his shoulders and back, which limits his ability to lift or carry heavy objects. [AR 25.] The ALJ noted that Plaintiff reported difficulty standing, sitting, or walking for significant durations before needing to change positions. [AR 25.] The ALJ also noted that Plaintiff testified that he could lift no more than three to five pounds, could stand for only five to twelve minutes, and that he used a cane or walker to ambulate. [AR 25.] The ALJ further noted that Plaintiff suffers from depression and experiences irritability and manic episodes which affect his ability to concentrate and interact appropriately with others. [AR 25.]

The ALJ then summarized the medical evidence and determined that Plaintiff's subjective symptoms were not fully supported by the medical records. [AR 25-28.] The ALJ noted that records prior to the protective filing date demonstrate a history of partial tear in Plaintiff's right shoulder in 2015. [AR 25 (citing AR 623).] The ALJ referenced later records that showed reports of bilateral shoulder pain, although an x-ray showed no significant degenerative changes and was otherwise benign. [AR 25 (citing AR 599, 677).] The ALJ further noted that a lumbar spine x-ray showed mild facet arthropathy bilaterally. [AR 25 (citing AR 688).] The ALJ noted that Plaintiff reported low back pain after a fall [AR 25 (citing AR 509)] and was advised to pursue home exercises and physical therapy [AR 25 (citing AR

11

591).] The ALJ highlighted exams that showed some lumbar spine tenderness, but found all other findings were within normal limits, including intact neurological findings. [AR 25 (citing AR 504, 510, 516, 523, 532, 623, 626, 629).]

The ALJ found that overall, the objective medical evidence as of the protective filming date showed only mild findings. [AR 26.] The ALJ highlighted physical exams that were largely within normal limits [AR 26 (citing AR 504, 510, 516, 523, 529, 623, 626, 629, 822-24)] and ongoing treatment that remained limited to conservative measures, mostly consisting of medication [AR (citing AR 629-631, 633-635).] The ALJ noted that mental status exams revealed some mood disturbances and cognitive deficits [AR 26 (citing AR 744, 930)], but stated that psychiatric findings in most medical visits throughout the record are entirely normal [AR 26 (citing AR 765, 812, 822-25, 833, 836, 839, 841, 844, 909, 921) and that Plaintiff denied anxiety or depressive symptoms [AR 26 (citing AR 632, 636)].

Plaintiff argues that the ALJ failed to make sufficient findings of fact with respect to Plaintiff' physical limitations. [Dkt. No. 13 at 5-8.] For example, with respect to Plaintiff's right shoulder, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's testimony that he could only lift three to five pounds and in determining an RFC that Plaintiff could lift/carry up to 50 pounds occasionally, despite the right shoulder tear. [Id. at 6-8.] Plaintiff also argues with respect to standing and walking, that the ALJ failed to present clear and convincing reasons for discounting Plaintiff's allegations that he has limitations with ambulating, which is evidenced by his use of an assistive device. Plaintiff asserts that in several medical records, providers personally observed Plaintiff using a cane several times. [*See* AR 438, 483, 574, 584, 742, 795, 848, 852, 865, 871, 923.] Plaintiff argues that the ALJ improperly fixated on

12

an isolated visit with a non-treating provider, in which the consultative examiner found Plaintiff's gait to be normal [AR 27 (citing AR 727)], while ignoring the numerous times that Plaintiff's gait was not normal [AR 575, 576, 580-581, 585-586, 590-591, 795, 904]. Plaintiff further asserts that he reported in disability paperwork that "I am steadily falling from the stand-up position to the ground" and reported falling in physical therapy. [AR 142, 372, 572, 625, 699, 854, 904.]

Here, the ALJ did not identify which specific statements of Plaintiff the ALJ found not credible or inconsistent. Further, while the ALJ summarized Plaintiff's subjective symptom testimony [AR 25], the ALJ did not identify which statements were or were not credible, and did not set forth any reasons why any of the cited medical evidence contradicts any of those statements.

Under Ninth Circuit precedent, this summary was insufficient to discount Plaintiff's testimony. *See Ferguson,* 95 F.4th at 1200 (finding error where the ALJ failed to specify *which* of Ferguson's many symptoms were, in the ALJ's view, inconsistent with the record evidence); *Brown-Hunter*, 806 F.3d at 494 (holding that an ALJ's analysis was insufficient where "[the ALJ] simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."); *Burrell*, 775 F.3d at 1137 (same where the ALJ's decision made a general statement discounting the claimant's credibility and then "drift[ed] into a discussion of the medical evidence" with "no *reasons* for the credibility determination") (emphasis in original); *Treichler*, 775 F.3d at 1103 ("An ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for our review.") (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)); *see also Lambert*, 980 F.3d at 1278 ("Although the ALJ did provide a relatively detailed overview of [the claimant's] medical history, 'providing a summary of

13

medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'") (ellipsis and emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494).

Moreover, even assuming arguendo, that the ALJ's claim that the objective medical evidence is inconsistent and does not support Plaintiff's subjective symptom testimony, a lack of objective medical evidence, on its own, cannot justify discounting Plaintiff's subjective symptom testimony.

### b) Routine or Conservative Treatment

Routine, conservative treatment can be enough to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra,* 481 F.3d at 750-51. Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti*, 533 F.3d at 1039. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle,* 533 F.3d at 1162.

The ALJ noted that Plaintiff's ongoing treatment remained limited to routine and conservative measures, largely consisting of medication. [*See* Dkt. No. 15 at 11; AR 25, 26 (citing AR 629-31, 633-35).] The ALJ explained that Plaintiff's treating provider noted that Plaintiff failed to appear to several appointments. [AR 26 (citing AR 621-22, 641-42, 695-96).] The ALJ further noted that medical records showed compliance issues with frequent reports that Plaintiff is not taking medication [AR 26 (citing AR 732, 741, 756)], indicating that his symptoms are not particularly bothersome. [AR 26-27.]

14

Here, the ALJ failed to properly determine the real reason for the perceived scarcity in treatment: Plaintiff's homelessness and lack of insurance. There are several notations in the medical records that "Plaintiff's medical insurance was cut-off" in January 2018. [AR 629, 503.] Further, Plaintiff testified that he began taking medication for his mental health issues in April and May 2022 and explained that he had not taken any psychotropic medication since 2015 because he was having problems with his insurance and was not able to get the medication. [AR 63-64, 741.] ALJs must consider possible reasons for a claimant's failure to comply with or seek treatment consistent with his alleged symptoms. SSR 16-3p, 82 FR 49462, 49466-67 (Oct. 25, 2017). The ALJ's opinion here, however, does not explore any of these explanations for Plaintiff's "conservative" treatment.

In addition, the Ninth Circuit has cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" "because mental illness is notoriously underreported." *Regennitter v. Commissioner of Social Sec. Admin,* 166 F.3d 1294, 1299–300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). Given this guidance and the evidence in the record, the ALJ's "conservative treatment" rationale for discounting Plaintiff's symptom testimony is not a clear and convincing reason supported by record evidence.

### c) Daily Activities

In discounting Plaintiff's testimony, the ALJ highlighted Plaintiff's ability to handle most of his personal care, go shopping for food three to four times per week, talk with his daughter daily, run errands and prepare meals. [AR 27 (citing AR 337-344, 713).] The ALJ also pointed to Plaintiff's statement that he "leaves his home daily and denied using public transportation [AR 27 (citing AR 337-344)] but in an exam stated that he takes the bus [AR 27 (citing AR 725)]." The ALJ found that this level of

15

functioning is inconsistent with Plaintiff's allegations of disabling symptoms. [AR 27.]

The ALJ, however, mischaracterizes Plaintiff's statements in the Adult Function Report and his activities. In his Adult Function Report, Plaintiff reported that he is homeless and lives alone. [AR 337.] Plaintiff reported that he tries to change his clothes and bathe at the shelter once a week. [AR 338.] He further reported that his daughter calls him daily to remind him to take his medication, to bathe and to change his clothes. [AR 339.] Plaintiff reported that he cannot prepare meals because he is homeless and has a hard time lifting and carrying things. [AR 339.] Plaintiff reported that he shops for pre-made food in stores three to four times a week. [AR 340.] He stated that he goes outside daily, because he is homeless, and travels by riding in a car or walking. [AR 340.] Plaintiff further stated that he is unable to pay bills, handle a savings account or use a checkbook. [AR 340.]

Here, the ALJ's reasons to discount Plaintiff's subjective symptom testimony based on Plaintiff's ability to handle his personal care, go shopping for food three to four times a week, talk with his daughter daily, and prepare meals is not supported by substantial evidence. The ALJ mischaracterizes Plaintiff's activities and makes no attempt to explain how any of these activities translated in the ability to work a full-time job. *See Orn*, 495 F.3d at 639. For example, Plaintiff's ability to shop for pre-made food three to four times a week does not necessarily impact the believability of his pain symptom testimony or establish that he engages in work-related skills on a regular basis. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("the mere fact that a plaintiff has carried on certain daily activities [] does not in any way detract from [his] credibility as to [his] overall disability.") Thus, the ALJ erred in discounting Plaintiff's statements without making specific findings relating to Plaintiff's daily activities and their transferability to the

workplace. *Burch*, 400 F.3d at 681. Accordingly, the ALJ's citation to Plaintiff's daily activities is not a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

In sum, because the ALJ failed to provide specific, clear, and convincing reasons to discount Plaintiff's statements, the ALJ erred in discrediting Plaintiff's subjective symptoms testimony. The Court does not find this harmless. If the ALJ had properly credited Plaintiff's testimony, it is possible that the ALJ either would have found that Plaintiff was disabled or rendered an RFC that accounted for the symptoms associated with his mental and physical impairments. As such, the ALJ's error was not "inconsequential to the ultimate nondisability determination." *Treichler*, 775 F.3d at 1099.

### B. Remaining Issue and Remedy

Plaintiff also contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred by improperly rejecting medical opinion evidence in assessing Plaintiff's RFC. [Dkt. No. 13 at 8-12.] Because the Court concludes that this case be remanded on an open record, the Court declines to address Plaintiff's other claim of error. *Google LLC v. Oracle America, Inc.*, 591 U.S. 1, 20 (2021) (appellate courts "should not answer more than is necessary to resolve the parties' dispute" on appeal); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("While Smith raises a number of issues on appeal, the court addresses only those relevant to its decision to remand the case to the agency[.]"); *Lambert*, 980 F.3d at 1278 ("We have no occasion to reach Lambert's other assignments of error, as the record may change on remand.").

17

### IV. Order

For all the reasons stated above, the ALJ's decision is reversed, and the case is remanded on an open record. A separate judgment will issue.

IT IS SO ORDERED.

Dated: January 30, 2025

_____
HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE